**Opinion issued February 20, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00959-CR & 01-12-00960-CR

————————————

## PATRICIA ANN TOPE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case Nos. 1801346 & 1801347**

---

## O P I N I O N

Appellant, Patricia Ann Tope, was charged with the misdemeanor offenses of driving while intoxicated ("DWI") and unlawfully carrying a weapon ("UCW") in the course of driving while intoxicated. Appellant filed pretrial motions to

dismiss and to conduct discovery and an evidentiary hearing related to the State's refusal to consider her for the Direct Intervention Using Voluntary Education Restitution & Treatment ("DIVERT") program, a pretrial diversion program available to some first-time DWI offenders in Harris County. The trial court denied her motion to dismiss, and appellant pleaded guilty to both offenses pursuant to a plea agreement with the State.[1] The trial court assessed her punishment for the DWI charge at 180 days' confinement, probated for one year, and a $300 fine.[2] For the UCW charge, the trial court deferred a finding of guilt and placed appellant on deferred adjudication community supervision for one year.

In five issues on appeal, appellant argues that: (1) the trial court erred in denying her motion to dismiss; (2) her exclusion from the DIVERT program was unconstitutional because it violated the separation of powers doctrine; (3) her exclusion from the DIVERT program violated her right to due process; (4) the trial court erred in denying her discovery request for a list of defendants who were charged with the same crimes as she was and were allowed to participate in the DIVERT program; and (5) the trial court erred in granting the State's motion to

---

[1] The trial court certified that appellant had the right to appeal the matters she raised through her written pretrial motions.

[2] The DWI charge resulted in trial court cause number 1801346 and appellate court cause number 01-12-00959-CR. The UCW charge resulted in trial court cause number 1801347 and appellate cause number 01-12-00960-CR.

2

quash the subpoenas she served on prosecutors involved in administering the DIVERT program. We affirm.

## Background

Appellant was charged by information with a misdemeanor offense of DWI. *See* TEX. PENAL CODE ANN. § 49.04(a), (b) (Vernon Supp. 2013). She was also charged with carrying a weapon while engaged in the DWI offense. *See* TEX. PENAL CODE ANN. § 46.02(a-1)(2)(A) (Vernon Supp. 2013). She applied to participate in the DIVERT program, a pretrial intervention program available through the Harris County District Attorney's Office ("HCDAO") for first-time offender, Class B misdemeanor DWI defendants. The State, acting through assistant district attorney Roger Bridgwater, the Bureau Chief for Professional Development, Community Protection, and Ethics, originally granted appellant an assessment interview, during which it would determine whether she was a good candidate for the program.

However, before appellant's scheduled interview, Melissa Munoz, another assistant district attorney involved with the DIVERT program, informed appellant via e-mail that her DIVERT assessment had been cancelled because her "DWI involve[d] a companion [UCW]. This type of companion offense exclude[d] [her] from DIVERT consideration." Appellant appealed that decision as provided by HCDAO's policies on the matter and was again informed, on the day after sending

her appeal letter, that she did not qualify for the DIVERT program because of the UCW charge.

Appellant then filed her "Motion for Discovery, to Conduct an Evidentiary Hearing, and to Dismiss." She requested that the State provide the rules and guidelines used in determining who qualified for pretrial diversion, the rules and guidelines used to deny appellant pretrial diversion, and the "names and case numbers of other defendants that have been charged with the same two offenses as [appellant] that were granted pretrial diversion." Appellant asked the trial court to hold an evidentiary hearing and then dismiss both charges against her, declare that HCDAO's DIVERT guidelines were void or in violation of the separation of powers doctrine and her due process rights, abate her prosecution until the constitutional violations were cured, and/or order that she be placed in the program.

The State agreed to produce the rules and guidelines it used in selecting candidates for DIVERT, but it challenged appellant's request that it be required to produce the names and case numbers for other defendants charged with similar crimes who were granted pretrial diversion. Appellant caused subpoenas to be served on Munoz and Bridgwater, seeking to have them testify regarding their consideration of candidates, including appellant, for DIVERT.

4

At the hearing on appellant's motion for discovery, the prosecutors explained the screening process for the DIVERT program, which used the guidelines that the State had provided to appellant when it explained that her UCW charge disqualified her for consideration for the DIVERT program. Munoz explained that, after original screening, prosecutors determined who would be eligible to participate in an assessment for the DIVERT program. Following the DIVERT assessment, prosecutors exercised their discretion in determining whether to grant a particular defendant the opportunity to participate in the DIVERT program based on the circumstances of each case. The State argued that responding to appellant's request for a list of similarly situated defendants who had been allowed to participate in DIVERT would be burdensome and that appellant had not shown a need for the information. Specifically, the prosecutor stated that to compile the list appellant sought, the State would have to go through more than four thousand files to determine which DIVERT participants might have had weapons charges in addition to their DWI charge. Appellant argued that it was possible that procuring the list could be as simple as "plugg[ing] in DWI/weapons charge and boom, they all come up." The prosecutor stated that she was not aware of whether that was an option. The trial court denied appellant's request.

The State also filed a motion to quash appellant's subpoenas served on Munoz and Bridgwater. It argued, among other things, that Munoz and other

assistant district attorneys were exercising prosecutorial discretion in the instant case, that "everything that [appellant] has described [that she would] be developing in this evidentiary hearing is precisely the thought processes and the work product processes of a prosecutor in a criminal case," and that appellant had not made the necessary showings to obtain that kind of testimony from Munoz or Bridgwater. Appellant argued that she sought the testimony of Munoz and Bridgwater to determine what discretion, if any, was exercised regarding HCDAO's decision to exclude her from the DIVERT program. Appellant also argued that she was entitled to information regarding whether other defendants in the same circumstances were approved for DIVERT and, if so, why appellant was excluded. The trial court granted the State's motion to quash the subpoenas for Munoz and Bridgwater.

Following these rulings, appellant pleaded guilty to both the DWI and the UCW charges. The trial court entered judgments based on appellant's plea agreements with the State. The trial court assessed her punishment for the DWI charge at 180 days' confinement, probated for one year, and a $300 fine. For the UCW charge, the trial court deferred a finding of guilt and placed appellant on deferred adjudication community supervision for one year. The trial court certified appellant's right to appeal the matters she raised through her written pretrial motions, and this appeal followed.

**Motion to Dismiss**

In her first issue, appellant argues that the trial court erred in denying her motion to dismiss. In her second issue, appellant argues that her exclusion from the DIVERT program was unconstitutional because it violated the separation of powers doctrine contained in the Texas Constitution. In her third issue, appellant argues that the DIVERT program violated her right to due process. We consider these issues together.

## A. Standard of Review

We apply a bifurcated standard of review when considering a trial court's ruling on a motion to dismiss a case. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011); *State v. Dinur*, 383 S.W.3d 695, 699 (Tex. App.— Houston [14th Dist.] 2012, no pet.). We give almost total deference to a trial court's findings of fact that are supported by the record, as well as any mixed questions of law and fact that rely upon the credibility of the witnesses. *Krizan-Wilson*, 354 S.W.3d at 815; *Dinur*, 383 S.W.3d at 699. But where, as here, resolution of the case turns solely upon questions of law or mixed questions that do not depend on credibility determinations, our review is de novo. *Krizan-Wilson*, 354 S.W.3d at 815; *Dinur*, 383 S.W.3d at 699.

"It is well established that there is no general authority that permits a trial court to dismiss a case without the prosecutor's consent." *State v. Muniga*, 119

7

S.W.3d 814, 816 (Tex. Crim. App. 2003). However, a trial court may dismiss a charging instrument when it is authorized to act by constitution, statute, or common law. *Id.* The Texas Court of Criminal Appeals has recognized a trial court's authority to dismiss a case without the State's consent when a defendant has been denied a right to a speedy trial, when there is a defect in the charging instrument, when, pursuant to Article 32.01, a defendant is detained and no charging instrument is properly presented, or when a violation of the Sixth Amendment causes the defendant demonstrable prejudice and the trial court is unable to identify and neutralize the taint by other means. *Id.*

In *Muniga*, the Court of Criminal Appeals held that

> [w]hile a trial court may dismiss a charging instrument to remedy a constitutional violation, the dismissal of an indictment is "a drastic measure only to be used in the most extraordinary circumstances." Therefore, where there is no constitutional violation, or where the [defendant's] rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the charging instrument without the consent of the State.

*Id.* at 817 (quoting *State v Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995) and citing *State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998)) (internal citations omitted). This Court recently applied this reasoning from *Muniga* in the context of an appellant's challenge to the constitutionality of her exclusion from a pretrial diversion program. *State v. McNutt*, 405 S.W.3d 156, 160–61 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

8

Here, appellant moved for dismissal on the grounds that her exclusion from the DIVERT program violated the separation of powers doctrine of the Texas Constitution and violated her constitutional due process rights. We address each alleged violation in turn.

## B.     Separation of Powers Doctrine

Article II, section 1 of the Texas Constitution divides the powers of state government into "three distinct departments" and confines each to "a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another." TEX. CONST. art. II, § 1. That section further provides that "no person, or collection of persons, being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." *Id.* To establish a violation under Article II, section 1, an appellant must show that one department has assumed, or has been delegated, to whatever degree, a power that is more "properly attached" to another or that one department has so unduly interfered with the functions of another that the department cannot effectively exercise its constitutionally assigned powers. *Wilkerson v. State*, 347 S.W.3d 720, 724 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *State v. Williams*, 938 S.W.2d 456, 458 (Tex. Crim. App. 1997)).

DIVERT is a pretrial diversion program run by the HCDAO rather than a statutory scheme. *Dinur*, 383 S.W.3d at 697 n.1. The HCDAO's authority to develop and implement such a scheme flows from the broad discretion of prosecutors to decide which cases to prosecute and what charges, if any, to file or bring before a grand jury. *See id.* at 698 (discussing DIVERT program and other HCDAO pretrial diversion programs); *see also Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) ("Both Texas and federal courts recognize that prosecutors have broad discretion in deciding which cases to prosecute. Thus, '[i]f the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion.'") (quoting *State v. Malone Serv. Co.*, 829 S.W.2d 763, 769 (Tex. 1992) and *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663 (1978)).

Furthermore, the Texas legislature has addressed the issue of pretrial diversion programs in limited circumstances. Texas Government Code section 76.011 authorizes the Community Supervision and Corrections Department to "operate programs for . . . the supervision and rehabilitation of persons in pretrial diversion programs. . . ." TEX. GOV'T CODE ANN. § 76.011(a) (Vernon Supp. 2013). A person's supervision through such a pretrial intervention program may not last for more than two years. *Id.* § 76.011(c). Additionally, a "district attorney,

criminal district attorney, or county attorney may collect a fee in an amount not to exceed $500 to be used to reimburse a county for expenses . . . related to a defendant's participation in a pretrial intervention program offered in that county." TEX. CODE CRIM. PROC. ANN. art. 102.0121(a) (Vernon Supp. 2013).

Here, appellant argues that the "legislative intent of [section 76.011(a) and article 102.0121] was to authorize the . . . offer [of] pretrial intervention if, in the exercise of its prosecutorial discretion, the prosecutorial authority believed that, in a particular case, pretrial intervention is warranted." Appellant argues that by creating "a general substantive rule" that "completely eliminated any prosecutorial discretion," the HCDAO usurped the role of the legislature. However, this argument misconstrues both the legislative provisions it cites and the concept of "prosecutorial discretion." The DIVERT program created by HCDAO was not created by the legislature as part of a statutory scheme. *See Dinur*, 383 S.W.3d at 697 n.1. Instead, it flows from long-established principles of prosecutorial discretion in determining which cases to prosecute and what charges, if any, to file. HCDAO's development and implementation of the DIVERT program, including establishing guidelines by which it determined who was eligible to participate in the program, were exercises of the HCDAO's prosecutorial discretion. *See Neal*, 150 S.W.3d at 173; *Dinur*, 383 S.W.3d at 697–700.

11

Appellant has failed to show that HCDAO assumed, or was delegated, a power that is more properly attached to the legislature, or that HCDAO has so unduly interfered with the functions the legislature that the legislature cannot effectively exercise its constitutionally assigned powers. *See Wilkerson*, 347 S.W.3d at 724. Therefore, we conclude that the trial court did not err in denying appellant's motion on this basis.

## C.     Due Process

"Procedural due process prevents the government from depriving an individual of a protected liberty or property interest in an arbitrary manner." *McNutt*, 405 S.W.3d at 161 (citing *Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex. Crim. App. 1995)). A defendant asserting a due process violation "must show an entitlement," and the interest at issue must "amount to more than a 'unilateral hope.'" *Id.* (quoting *Montgomery*, 894 S.W.2d at 327). In *McNutt*, we cited federal cases that drew an analogy between plea bargain cases, asserting that a defendant has no absolute right to enter into a plea bargain, and McNutt's case, in which she complained of being excluded from a pretrial diversion program, in concluding that "there is no right or entitlement to enter into pretrial diversion." *Id.* We stated that because an appellant's due process rights are not implicated by being excluded from a pretrial diversion program, the trial court did not have authority to dismiss the case on the basis of a due process violation. *Id.*; *see also*

12

*Muniga*, 119 S.W.3d at 817 (stating that trial court errs by dismissing case without prosecutor's consent when there is no constitutional violation).

The same reasoning applies here. Appellant has not identified any statutory or case law that creates a right or entitlement to be placed into pretrial diversion. Because there is no right or entitlement to enter into pretrial diversion, appellant's due process rights were not implicated, and the trial court did not err in denying her motion to dismiss on this basis. *See McNutt*, 405 S.W.3d at 161

We overrule appellant's first three issues.

### Discovery Ruling

In her fourth issue, appellant argues that the trial court erred in refusing her discovery request for "the names and case numbers of other defendants . . . charged with the same two offenses as defendant [and] that were granted pretrial diversion."

We review the trial court's rulings on motions for pretrial discovery for an abuse of discretion. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Shpikula v. State*, 68 S.W.3d 212, 222 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Criminal defendants do not have a general right to discover evidence before trial, but they have been granted limited discovery. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2013); *Washington v. State*, 856 S.W.2d 184, 187 (Tex. Crim. App. 1993); *Scaggs v. State*, 18 S.W.3d 277, 294–95

(Tex. App.—Austin 2000, pet. ref'd) (holding that defendant in criminal case does not have general right to discovery of evidence in State's possession).

Article 39.14 provides:

> Upon motion of the defendant showing good cause therefor and upon notice to the other parties . . . , the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute and contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies.

TEX. CODE CRIM. PROC. ANN. art. 39.14(a). To obtain discovery under article 39.14, a defendant must show good cause for discovery of the item, the item is material to the defense, and the item is possessed by the State. *See id.*; *In re Watkins*, 369 S.W.3d 702, 707 (Tex. App.—Dallas 2012, orig. proceeding). The defendant has the burden of showing good cause for inspection, and the decision on what is discoverable is left to the discretion of the trial court. *McBride v. State*, 838 S.W.2d 248, 250 (Tex. Crim. App. 1992); *Bell v. State*, 866 S.W.2d 284, 288 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

Here, appellant has failed to demonstrate that the information she requested—"the names and case numbers of other defendants . . . charged with the same two offenses as defendant [and] that were granted pretrial diversion"—

14

existed and was in the State's possession. At the hearing on appellant's motion for discovery, the prosecutor stated that to provide the information sought by appellant, the State would have to examine between four and five thousand files of defendants who participated in the DIVERT program to determine which of those cases involved defendants who had been charged with UCW or any other similar weapons charge in conjunction with their DWI charge. The information sought by appellant did not already exist in the State's possession in the format requested by appellant. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (providing that defendant may discover, upon notice and showing of good cause, material evidence that is in possession, custody, or control of State or its agencies). Furthermore, even if the requested information already existed in the State's possession, appellant has failed to show that this information was material to her defense in the DWI charge pending against her. *See id.*; *McBride*, 838 S.W.2d at 250. She asked that the State undertake the burdensome task of reviewing thousands of cases in an attempt to raise a constitutional objection to the State's exercise of prosecutorial discretion regarding a pretrial diversion program. Appellant does not argue that any of the information contained in the requested discovery was potentially exculpatory or necessary to defending the DWI charge pending against her. Thus, appellant has not shown that the trial court abused its discretion in denying her discovery request.

We overrule appellant's fourth issue.

## Motion to Quash Subpoenas

In her fifth issue, appellant argues that the trial court erred in granting the State's motion to quash the subpoenas she served on prosecutors Munoz and Bridgwater regarding her involvement with the DIVERT program.

While the Texas Constitution provides that criminal defendants have a right to compulsory process for obtaining witnesses, that right is not absolute; rather, it is subject to the trial court's discretion. *Ortegon v. State*, 267 S.W.3d 537, 542 (Tex. App.—Amarillo 2008, pet. ref'd) (citing *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987)); *see* TEX. CONST. art. I, § 10. A criminal defendant is not entitled to subpoena district attorneys and county judges and question them regarding the exercise of prosecutorial discretion. *See Russeau v. State*, 171 S.W.3d 871, 887 (Tex. Crim. App. 2005). Appellant argues that Bridgwater and Munoz could "state exactly how those rules [regarding the effect of weapons charges on eligibility for the DIVERT program] were used in this case and in the case of others similarly situated. . . ." We have already held that HCDAO's decisions regarding when to allow defendants to participate in a pretrial diversion program involve the exercise of prosecutorial discretion. Accordingly, the trial court did not err in quashing appellant's subpoenas served on Bridgwater and Munoz. *See id.*

We overrule appellant's fifth issue.

## Conclusion

We affirm the judgments of the trial court in both causes.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Publish.   TEX. R. APP. P. 47.2(b).